IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Appeal No. 24-5035

Austin P. Bond, as Personal Representative of
the Estate of Terral Ellis, II, deceased – *Plaintiff/Appellee*
vs.
The Sheriff of Ottawa County, in his official capacity – *Defendant/Appellant*

AND

Appeal No. 24-5080

Austin P. Bond, as Personal Representative of
the Estate of Terral Ellis, II, deceased – *Plaintiff/Appellee*
vs.
The Sheriff of Ottawa County, in his official capacity – *Defendant/Appellant*

---

**REPLY BRIEF OF DEFENDANT/APPELLANT**

---

Appealed from the United States District Court
for the Northern District of Oklahoma
District Court Case No. 4:17-cv-00325-CRK-CDL
Honorable Claire R. Kelly, Judge[*]

Wellon B. Poe, OBA No. 12440
Jamison C. Whitson, OBA No. 18490
Alison B. Levine, OBA No. 33021
COLLINS ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK 73105
Telephone: (405) 524-2070

ATTORNEYS FOR DEFENDANT/
APPELLANT SHERIFF OF OTTAWA
COUNTY

October 15, 2024          **ORAL ARGUMENT REQUESTED**

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS............................................................................i

TABLE OF AUTHORITIES .............................................................ii-iii

I.     THE SHERIFF'S APPENDIX AND FACTS ARE SUFFICIENT ...............1

II.    JUDGMENT AS A MATTER OF LAW SHOULD HAVE BEEN
       GRANTED ...................................................................................3

III.   A NEW TRIAL SHOULD HAVE BEEN GRANTED ................................11

       A.     Crying In Front of the Jury.................................................12

       B.     Damages Argument Constituted Misconduct .....................14

IV.    THE SIZE OF THE VERDICT WAS EXCESSIVE ....................................16

V.     THE JURY INSTRUCTIONS WERE NOT ADEQUATE.........................19

VI.    THE ATTORNEY FEE AWARD WAS ABUSE OF DISCRETION .........21

VII.   THE DISTRICT COURT HAD JURISDICTION TO CONSIDER
       THE MOTION TO RECONSIDER.............................................................22

CONCLUSION....................................................................................24

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................24

CERTIFICATE OF COMPLIANCE........................................................25

CERTIFICATE OF SERVICE ........................................................25, 26

## <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Adkins v. Rodriguez*, 59 F.3d 1034 (10th Cir. 1995) ...................................................5

*Aldrich Enterprises, Inc. v. U.S.*, 938 F.2d 1134 (10th Cir. 1991) ..........................22

*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189
  (10th Cir. 2010) .........................................................................................................9

*Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019).............................................. 3, 19

*Carey v. Lovett*, 622 A.2d 1279 (N.J. 1993) .............................................................14

*Chalmers v. City of Los Angeles*, 762 F.2d 753 (9th Cir. 1985)....................... 14, 15

*Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) ........................................................5

*Crowson v. Washington Co. Utah*, 983 F.3d 1166 (10th Cir. 2020) ........ 7, 8, 19, 20

*DeSpain v. Uphoff*, 264 F.3d 965 (10th Cir. 2001).....................................................3

*Dixon v. County of Cook*, 819 F.3d 343 (7th Cir. 2016)..................................... 9, 10

*Farmer v. Brennan,* 511 U.S. 825 (1994)...................................................... 3, 4, 5, 6

*Favela v. City of Las Cruces ex rel. Las Cruces Police Dept.*,
  431 F.Supp.3d 1255 (D.N.M. 2020) ......................................................................23

*Henning v. Union Pacific Railroad,* 530 F.3d 1206 (10th Cir. 2008) .....................20

*Hinkle v. Beckham Cty. Bd. of Cty. Commissioners*, 962 F.3d 1204
  (10th Cir. 2020) .........................................................................................................7

*Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir. 1995) ..............................................22

*Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) ................................9

*Lincoln v. BNSF Railway Co.*, 900 F.3d 1166 (10th Cir. 2018)...........................1, 2

*McBride v. Deer*, 240 F.3d 1281 (10th Cir. 2001) ....................................................5

*Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico*, 554 F.3d 164 (1st Cir. 2009)........................................................................18

*Osterhout v. Bd. of Cnty. Commissioners of LeFlore Cnty.*, 10 F.4th 978 (10th Cir. 2021)..........................................................................................................12

*People v. Brown*, 2015 Ill. App. 4th. 130412 (Ill. App. Ct. 2015) ..........................14

*People v. Dukes*, 12 Ill.2d 334, 146 N.E.2d 14 (1957)............................................14

*Praseuth v. Rubbermaid*, 406 F.3d 1245 (10th Cir. 2005) .....................................22

*Racher v. Westlake Nursing Home,* 871 F.3d 1152 (10th Cir. 2017)......................16

*Ramirez v. N.Y. City Off-Track Betting Corp.*, 112 F.3d 38 (2d Cir. 1997)..... 14, 15

*Ramos*, v. *Lamm*, 713 F.2d 546 (10th Cir. 1983) .....................................................22

*Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473 (7th Cir. 2022) .....................10

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).......................7

*Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923 (8th Cir. 2010) ...............19

*Spahr v. Ferber Resorts, LLC*, 686 F.Supp.2d 1214 (D. Utah 2010).....................15

*Therrien v. Target Corp.*, 617 F.3d 1242 (10th Cir. 2010)......................................13

*Warren v. American Bankers Ins. Of Florida*, 507 F.3d 1239 (10th Cir. 2007) .....22

*Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122 (10th Cir. 2009).....................12

*Young v. Correctional Healthcare Companies, Inc.*, ___ F. Supp. 3d ____, 2024 WL 866286 (N.D. Okla. Feb. 29, 2024) ....................................................... 14, 23

## **TENTH CIRCUIT RULES**

10th Cir. R. 10.3(A) ................................................................1

10th Cir. R. 28(a)(6) ...............................................................2

10th Cir. R. 28.1(A)(1) ...........................................................3

## **FEDERAL RULES OF APPELLATE PROCEDURE**

Fed. R. App. P. 30(a)(1) ..........................................................1

<u>**APPELLANT'S REPLY BRIEF**</u>

Appellant/Defendant Sheriff of Ottawa County, in his official capacity ("Sheriff"), hereby submits this Reply to the Corrected Response Brief filed by Appellee Austin Bond ("Bond") on September 30, 2024.

## I.    THE SHERIFF'S APPENDIX AND FACTS ARE SUFFICIENT

Bond asserts throughout his Response Brief that the Sheriff's Appendix and facts are insufficient to allow this Court to consider the issues raised in the appeal. The extensive Appendix filed by the Sheriff is sufficient, as are the facts discussed within the Brief itself. Applicable rules from the Tenth Circuit and Federal Rules of Appellate Procedure require appellants to submit an appendix which contains relevant docket entries from the trial court proceeding as well as "other parts of the record to which the parties wish to direct the court's attention" which are sufficient for considering and deciding the issues that have been appealed. Fed. R. App. P. 30(a)(1); 10th Cir. R. 10.3(A). This court has no obligation to examine documents which should have been included in the appendix or to hear claims predicated on evidence not in the appendix. *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1190 (10th Cir. 2018) (citing *Milligan-Hitt v. Be. Of Trs. of Sheridan Cty. Sch. Dist. No. 2*, 523 F.3d 1219, 1231 (10th Cir. 2008)). However, "[w]here an appendix is generally deficient but the materials provided by the appellant permit [the court] to reach a firm and definite conclusion regarding the merits of an individual argument or claim within the appeal," the claim or argument will often be addressed, unless it

requires the court to "venture a guess as to the merits of an argument or claim." *Id.* Additionally, the court may choose to look at evidence contained within a supplemental appendix filed by the appellee.[1]  *Id.*

Here, the Sheriff submitted an Appendix containing sixteen (16) volumes and over 3,400 pages of material, including the two trial court Orders being appealed, the briefing and all exhibits related to those Motions, all of the trial transcripts from the eight (8) day trial, and thirty-six (36) videos and video clips which were filed conventionally. [Aplt. App. Vols. I-XVI]. The Appendix is therefore clearly sufficient for this Court to consider and determine the issues raised by the Sheriff on appeal without having to guess as to the merits of the Sheriff's arguments or claims.

Bond also complains that the "Statement of Facts" portion of the Sheriff's Brief is insufficient. However, Tenth Circuit Rule 28 requires that an appellant include "a concise statement of the case setting out the facts relevant to the issues submitted for review." 10th Cir. R. 28(a)(6). The Sheriff included such a concise statement. The relevant facts are clearly discussed in-depth within the body of the

---

[1] Bond filed a Supplemental Appendix. This Court's September 27, 2024 Order permitting Bond to file certain exhibits on USB drives required that he serve a copy of the USB drives on the Sheriff. The Sheriff has not received any such drives from Bond.

Sheriff's Brief itself. Bond's argument that the Sheriff's Brief and Appendix are insufficient for this Court to consider is therefore without merit.[2]

## II.    JUDGMENT AS A MATTER OF LAW SHOULD HAVE BEEN GRANTED

Bond asserts in his Response that the evidence that a constitutional violation occurred is overwhelming. Citing to *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019), he acknowledges that to satisfy the subjective component of the deliberate indifference test, he must demonstrate jail employees both knew of and disregarded an excessive risk of harm to Ellis's health. (Response, p. 31). He further acknowledges that because "it is difficult, if not impossible, to prove another person's actual state of mind," that "whether an official had knowledge may be inferred from circumstantial evidence. *DeSpain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001). However, the U.S. Supreme Court has been clear that it is not enough to establish that jail employees *should* have known of the risk of harm to Ellis. *Farmer v. Brennan,* 511 U.S. 825, 837-838 (1994). Nor it is enough to show that a reasonable

_____

[2] The Sheriff notes that Bond's Response Brief is deficient. Tenth Circuit Rule 28.1 requires that briefs should reference the appendix by volume and page number. 10th Cir. R. 28.1(A)(1). Bond's Brief, which he certified totals 18,999 words, does not reference the volume number of Appellant's Appendix or the Supplemental Appendix, unless quoting from the Sheriff's Brief which did cite volume numbers. The Response Brief was limited to 19,000 words by this Court's August 6, 2024 Order. It thus skirts the word limit by omitting the appendix volume references.

person would have known of the seriousness of the risk based on the obviousness of the risk. *Farmer,* 511 U.S. at 843, fn. 8.

Bond's argument rests on the contention that Ellis's condition was so obvious that jail employees should have recognized and understood the seriousness of his condition. Obviousness of a risk "is not conclusive and a prison official may show that the obvious escaped him." *Farmer,* 511 U.S. at 843, fn. 8. Bond concedes in his Response that jail employees testified that the obviousness escaped them, but claims that the testimony was self-serving and should be disregarded. (Response, p. 32). When an official has presented testimony that the obvious escaped him, he can still be held liable for deliberate indifference "if the evidence showed that he merely refused to verify underlying facts that he **strongly suspected to be true**, or declined to confirm inferences of risk that he **strongly suspected to exist**." *Id.* (emphasis added).

As the Sheriff demonstrated in his Opening Brief, there is no evidence in the record that Horn or other jail employees strongly suspected that Ellis was at a substantial risk of serious harm but failed to act in spite of that suspicion. When Horn was called at 10:00 p.m. the night before Ellis's death regarding his complaints of being in pain and numbness, she advised staff that EMS had already evaluated Ellis, to give him over-the-counter pain medication, to tell him to get up and move around, and that she would see him the following morning. [Aplt. App. Vol. XV, 3337-

3340]. Bond placed an enormous amount of emphasis both at trial and in his Response on Horn's visit to Ellis's cell the following morning, arguing that the profanity and yelling at him, rather than examining him, constituted deliberate indifference. [Aplt. App. Vol. VII, 1476:18-22]; (Response, p. 33). He characterizes her interaction with Ellis as a "vile display of cruel and inhumane abuse." (Response, p. 33). Her actions, demeanor, and language, all of which can be seen on video, along with her testimony at trial, clearly show that she did *not* refuse to verify facts she strongly suspected to be true at the time. To the contrary, the evidence shows she did not suspect anything was seriously wrong with Ellis, as she told him directly that EMS had already checked him out and that nothing was wrong with him. [Aplt. App. Vol. XVI, 3413]. Cruel words cannot be mistaken for cruel and unusual punishment, which is the constitutional right Bond claims was violated. *McBride v. Deer*, 240 F.3d 1281, 1291, n. 3 (10th Cir. 2001); *Adkins v. Rodriguez*, 59 F.3d 1034, 1037-38 (10th Cir. 1995); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (per curiam).

Horn's belief that nothing was wrong with Ellis was obviously incorrect and unfortunately her mistake had dire consequences. But deliberate indifference requires "a higher degree of fault than negligence." *Farmer,* 511 U.S. at 835. The deliberate indifference test is not satisfied by jail officials merely perceiving or knowing that Ellis was ill or that he was having a medical problem. To satisfy the test, Bond was required to prove that jail employees knew that Ellis was facing a

*substantial* risk of *serious* harm and that they refused to act though they had that knowledge. The evidence does not show that jail staff perceived, understood, and appreciated the risk to Ellis's health. Because the evidence has shown that obviousness escaped jail staff and they did not ignore a risk which they strongly suspected existed, the Sheriff is entitled to judgment as a matter of law on the deliberate indifference claim. *See Farmer*, 511 U.S. at 843, fn. 8.

Bond devoted seven (7) full pages of his Response to arguing that the Sheriff is not entitled to judgment as a matter of law because jail staff were subjectively aware of a serious risk of harm to Ellis's safety but failed to abate that risk. (Response, pp. 29-34). He specifically argued that Horn and other jailers were deliberately indifferent to Ellis's serious medical needs throughout his entire detention but did not once acknowledge in those seven pages that EMS had been called for Ellis on October 21, less than 24 hours before Ellis's death, that EMS found he was not experiencing a medical emergency, or that Ellis refused transport to the hospital.[3] [Aplt. App. Vol. IV, 884:18-885:9; Vol. V, 1143:22-1144:15;

---

[3] Elsewhere in the Response he claims that Ellis did not refuse transport to the jail and cites to testimony from paramedic Kent Williams in Aplt. App. Vol. V at 1161:5-7 as evidence Ellis did not refuse transport. (Response p. 6). However, Bond has mischaracterized that testimony. Mr. Williams testified that Ellis did not *sign the paperwork* stating that he refused transport to the hospital. [Aplt. App. Vol. V, 1161:5-7]. Williams very clearly testified that Ellis refused to allow EMS to take him to the hospital, demanding to be taken back to his cell instead. [Aplt. App. Vol. V, 1206:16-1207:3].

1168:24-1169:24; 1206:16-1207:3]. That fact is crucial as to whether any deliberate indifference occurred but has been glossed over or outright ignored by both Bond and the trial court. [Aplt. App. Vol. XIV, 3088-3133]. When ruling on motions for judgment as a matter of law, courts must examine all of the evidence in the record without weighing the evidence or making determinations regarding evidence credibility. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-150 (2000). While evidence must be reviewed in the light most favorable to the non-moving party, courts are not free to ignore evidence which favors the moving party and must review the record as a whole. *Id.* That did not occur in the District Court.

Even if Ellis's constitutional rights were violated by jail employees, the Sheriff is still entitled to judgment as a matter of law because *Monell* liability was not established. Citing to *Hinkle v. Beckham Cty. Bd. of Cty. Commissioners*, 962 F.3d 1204, 1239 (10th Cir. 2020), Bond acknowledges that he must prove that an official policy or custom caused the violation and also prove "state of mind." (Response, p. 38). He focuses on a systemic failure of medical policies and procedures at the jail being the basis for liability under *Crowson v. Washington Co. Utah*, 983 F.3d 1166, 1192 (10th Cir. 2020). Specifically he argues that none of the written medical policies were followed or enforced. (Response, p. 42). He cites to testimony from former jailer Lawson that the Assistant Jail Administrator at the time instructed jailers to ignore the policy manual, but that statement was *not* made

regarding medical care policies, it was made regarding the policy applicable to use of force by jail staff when defending themselves from an assault by inmates. [Aplt. App. Vl. VI, 1221:3-21]. Nothing in *Crowson* allows for imposing *Monell* liability on a governmental entity for deliberate indifference to medical care on the basis of a systemic failure of policies which were categorically unrelated to medical care. In that regard, Lawson's testimony is completely irrelevant.

As for Bond's claim that jail policy was not followed regarding setting a specific day of the week for Physician Assistant Fox to come to the jail to see inmates,[4] Fox testified that she would come to the jail once a week, but the day of the week was flexible and there were some weeks when she was not needed there. [Aplt. App. Vol. VIII, 1744:23-1746:1). However, she was on call and would come to the jail whenever Horn asked her to, meaning that there were some weeks she was in the jail *more* than once per week. [Aplt. App. Vol. VIII, 1744:23-1749:18]. Fox took calls from Horn about inmate medical care *daily* and provided instructions and medical advice over the phone, which was also standard for her to do in her private practice. [Aplt. App. Vol. VIII, 1751:1-16, 1752:8-14]. While the policy was that Fox would visit the jail on a regular but unspecified day of the week, the failure to

---

[4] Bond mischaracterizes the testimony from the former Jail Administrator Harding regarding speaking to Fox. Bond states that Harding did not "ever even speak with Ms. Fox." [Response, p. 43). Harding did not testify that he had never spoken to Fox at all. He testified that he had never spoken to her *about her contract*. [Aplt. App. Vol. III, 796:24-797:8].

follow that policy must have resulted in a systemic denial of access to medical care to inmates for liability under *Crowson* to attach. That did not occur here. Nor is there any indication that Fox not visiting the jail on a set day of the week resulted in any violation of Ellis's constitutional rights. Again, an ambulance was called for Ellis on the afternoon of October 21, less than 24 hours before his death, and he refused to be transported to the hospital for further evaluation and treatment at that time. [Aplt. App. Vol. IV, 884:18-885:9; Vol. V, 1143:22-1144:15; 1168:24-1169:24; 1206:16-1207:3]. Even if Fox had maintained a regular day of the week to visit the jail, that would have had no impact on Fox evaluating Ellis subsequent to the EMS visit unless October 22 just happened to fall on her regularly scheduled day at the jail. Consequently, violation of that policy cannot fairly be said to have caused the constitutional violation, even if one occurred.

It is well-established in § 1983 jurisprudence that in order for municipal liability to exist on the grounds that an informal custom caused a constitutional violation, the custom in question must be so widespread and permanent as to have the force and effect of law. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010); *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996). In *Dixon v. County of Cook*, 819 F.3d 343 (7th Cir. 2016), the Seventh Circuit held that this same standard is applicable when a plaintiff seeks to establish municipal liability on the basis of "systemic and gross deficiencies in staffing,

facilities, equipment, or procedures in a detention center's medical care system." *Id.* at 348. The plaintiff must prove "that the inmate population is effectively denied access to adequate medical care" as a result of the systemic failure." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 489 (7th Cir. 2022) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 910th Cir. 1980)). Demonstrating one or two instances where access to healthcare was denied is therefore insufficient to meet this standard. *Dixon*, 819 F.3d at 348 (citing *Pehlan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006)). Yet evidence of only isolated, not widespread, incidences were introduced at trial and relied on by the District Court. [Aplt. App. Vol. XIV, 3088-3133].

The Seventh Circuit additionally held that even when a system failure is found to exist, *Monell* liability exists only when the plaintiff has proven that the policy-making official knew about the system failure but failed to correct the problem in spite of that knowledge. *Id.* (citing *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983); *City of St. Louis v. Prapotnik*, 485 U.S. 112, 130 (1988)). In this case, Bond did not prove that the Sheriff knew about a systemic failure at the time, but failed to correct it. The Sheriff introduced testimony that prior to Ellis's death, then-Sheriff Durburow had no reason to believe the healthcare being provided to inmates may possibly violate constitutional rights. [App. Vol. XVI, 3415]. Bond did not produce evidence to refute this. Instead, Bond argues that he did not have to demonstrate then-Sheriff Durburow knew the healthcare system was deficient because he claims

that the deficiency was "so obvious that [the Sheriff] *should have known* of it." (Response, p. 44). It appears, then, that liability was imposed on the Sheriff in this case because the Sheriff *should have known*, but did not know, that the healthcare delivery system was deficient, which resulted in employees taking actions which were only constitutionally deficient because *they should have known*, but did not know, Ellis was at a substantial risk of serious harm. Applying the law in this manner severely dilutes the requirements for imposing § 1983 liability on a municipal defendant. The District Court therefore erred when it denied the Sheriff's Motion for Judgment as a Matter of Law.

## III.    A NEW TRIAL SHOULD HAVE BEEN GRANTED

In his Response to the Sheriff's arguments regarding the Motion for New Trial, Bond notes that the Sheriff's arguments that the jury verdict was against the weight of the evidence are nearly identical to the arguments regarding judgment as a matter of law. (Response, p. 48). Bond then refers this Court to the arguments in his Response regarding judgment as a matter of law. *Id.* Because the arguments are indeed largely the same, the Sheriff likewise refers this Court to Section II above regarding the jury verdict being against the weight of the evidence. Regarding the conduct of Bond's counsel warranting a new trial, he argues that the conduct in question was not "misconduct" and that his counsel did not encourage the jury to use compensatory damages to punish the Sheriff.

### A.    Crying In Front of the Jury

As for misconduct, Bond acknowledges that where misconduct is concerned, the "[t]he ultimate question is whether the alleged misconduct would have been prejudicial or harmless" and that the four factors identified in *Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122 (10th Cir. 2009) are applicable. (Response, pp. 49-50, quoting *Osterhout v. Bd. of Cnty. Commissioners of LeFlore Cnty.*, 10 F.4th 978, 989 (10th Cir. 2021)). In this case, the misconduct was harmful and resulted in prejudice to the Sheriff. Bond denies that his counsel cried during the trial and argues that there is no evidence in the record of crying. (Response, p. 51). As the Sheriff stated in his Opening Brief, Bond's counsel "began to cry" while questioning witness Harding. (Opening Brief, p. 41). The record supports that he did, in fact, begin to cry. [Aplt. App. Vol. III, 739:7-741:2]. Counsel was so emotional that he told the judge he could not "physically control snot dripping out of [his] nose" and had to get a tissue. [Aplt. App. Vol. III, 739:7-741:2]. Whether Bond wants to classify that as "crying" or not is immaterial; an emotional display so significant that it produced dripping snot is what the jury saw and is what is relevant here, not the label attached to it.[5] The record also demonstrates that Bond's counsel argued with

---

[5] Bond implies in footnote 15 of his Response that the Sheriff has changed his position on whether Bond's attorney cried or not between filing the Motion for New Trial in the District Court and filing his Opening Brief in this appeal. The Sheriff notes that "purportedly" and "apparently" were used in the trial court because Bond's counsel seems to have a very different interpretation of what behavior

the judge over taking a break to compose himself when she suggested he do that. [Aplt. App. Vol. III, 739:7-741:2]. Despite that occurring during Harding's questioning, and despite the judge issuing a preemptive warning to Bond's counsel, a similar incident happened again during closing arguments. [App. Vol. VIII, 1668:6-1669:14)]. During closing, he again apparently began to cry, but denied he was crying, even though defense counsel observed him doing so and the judge told him she heard him sniffling. [Aplt. App. Vol. IX, 1822:2-24)].

Bond asserts that the Sheriff has forfeited appellate review of this issue because defense counsel did not object at trial. (Response, pp. 51-52). The record is clear that the Sheriff objected during trial. Defense counsel called the judge's attention to Bond's attorney starting to cry; as a result of defense counsel saying "Your Honor" when the emotional display started, a sidebar was held wherein Bond's counsel again argued with the judge over whether or not he was crying in front of the jury. [Aplt. App. Vol. IX, 1902:2-24]. In *Therrien v. Target Corp.*, 617 F.3d 1242, 1254 (10th Cir. 2010), the court held that an objection should be sufficiently clear to "render the grounds" of an objection "obvious, plain, or unmistakable." *Id.* Although the word "object" or "objection" was not used, the

_____

constitutes "crying" than does the Sheriff. Notably, the Sheriff also used the phrase "purportedly crying" in his Opening Brief in this Court. (Opening Brief, p. 42). The Sheriff's position that Bond's counsel was crying and that the emotional display was improper and prejudicial has never changed.

objection and its grounds were obvious and unmistakable in the record. Defense counsel did not let that misconduct continue without court intervention to stop it. The issue has thus not been forfeited.

Bond responded to the Sheriff's arguments that the two instances of crying constituted misconduct by asserting that two crying incidents over a period of 8 days was not pervasive enough to warrant a new trial. (Response, p. 53). As the Sheriff demonstrated in his Opening Brief, the two incidents were significant enough to result in prejudice to the Sheriff because counsel crying inflames the emotions of the jury. The Sheriff cited to *People v. Brown*, 2015 Ill. App. 4th. 130412 (Ill. App. Ct. 2015), *People v. Dukes*, 12 Ill.2d 334, 146 N.E.2d 14, 17 (1957), *Carey v. Lovett*, 622 A.2d 1279 (N.J. 1993), and *Young v. Correctional Healthcare Companies, Inc.*, ___ F. Supp. 3d ____, 2024 WL 866286 (N.D. Okla. Feb. 29, 2024) as persuasive authority for that argument. Bond responded only by stating *Carey* is not analogous, without any further explanation and without acknowledging or addressing *Young*.

### B.    Damages Argument Constituted Misconduct

It is undisputed in this case that the jury was not permitted to award punitive damages to Bond. Bond contends in his Response that it was not improper for his counsel to ask for deterrence damages in his closing argument. He cites to *Ramirez v. N.Y. City Off-Track Betting Corp.*, 112 F.3d 38, 40 (2d Cir. 1997) and *Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir. 1985), which are decisions from

the Second and Ninth Circuits, to support that argument that it was permissible for his counsel to ask the jury for deterrence damages. He has not pointed to any supportive authority from the Tenth Circuit or from federal courts within the Tenth Circuit which state anything similar. The Second Circuit's decision in *Ramirez* has no relevance because the case did not involve a § 1983 claim and because the defendant failed to object to the deterrence remarks at trial. *Ramirez*, 112 F.3d at 40. That was not the case here.

The Ninth Circuit's *Chalmers* decision is equally irrelevant and unpersuasive. The *Chalmers* court held that "an argument which emphasizes deterrence is not *necessarily* equivalent to an argument for punitive damages," indicating there are certainly situations in which such an argument is equivalent to requesting punitive damages. *Chalmers*, 762 F.2d at 761. The opinion is devoid of anything which indicates what exactly the plaintiff's counsel said or in what context he said it during the closing arguments. *Id.* It states only that the defendant claimed the plaintiff's attorney discussed "the deterrent effects of damages under section 1983." *Id.* The decision is therefore not relevant to this analysis because remarks made during closing arguments must be examined "in context and in the totality of the argument" to determine whether they had resulted in unfair prejudice. *Spahr v. Ferber Resorts, LLC*, 686 F.Supp.2d 1214, 1223 (D. Utah 2010). Bond has not pointed to anything which rebukes that in the Tenth Circuit, deterrence arguments are *only* appropriate

15

"when the law and evidence place the issue of punitive damages before the jury." *Racher v. Westlake Nursing Home,* 871 F.3d 1152, 1169 (10th Cir. 2017).

Considering the context in which Bond's counsel discussed deterrence and considering the totality of the closing argument, the remarks made to the jury about using the verdict as deterrence were improper, it was reasonably probable that they influenced the jury, and that the Sheriff was unduly prejudiced as a result. Bond asserts that he "never requested or mentioned punitive damages." (Response, p. 71). But as Bond states in his own Response, the context in which his counsel made the remarks was refuting defense counsel's statements that punitive damages were not available. (Response, pp. 53-54). The intent was very clearly to send the message to the jury that although the Sheriff says you cannot directly punish him, the point of a § 1983 lawsuit is that you can punish him in a roundabout way. The jury clearly received and acted on that message, so a new trial is warranted.

## IV.    THE SIZE OF THE VERDICT WAS EXCESSIVE

That the size of the verdict was excessive is relevant to Bond's response to the Sheriff's arguments regarding both remittitur and a new trial. (*See* Response, pp. 58-60, 67-75). Bond contends that the Sheriff did not offer any support for his argument that the damages award was shocking and excessive. (Response, p. 58). To the contrary, the Sheriff discussed and demonstrated the excessiveness and shocking nature of the award in both his Opening Brief and Supplemental Brief.

(Opening Brief, p. 40-62; Supplemental Brief, pp. 3-9, 11-12). Bond cites to the portion of the District Court's Order which declared the size of the verdict to be large but not conscience shocking given the evidence heard by the jury. (Response, p. 59, citing Aplt. Appx. Vol. XIV, 3116). The evidence the District Court mentioned in the Order was that on the evening of October 21, Ellis complained to jail staff that his legs were numb, that jail staff took no action regarding Ellis's "verbal distress and suffering" on the morning of October 22, that one jailer prevented another from giving him water, that he laid on a urine-soaked mattress and cried out for his son, that he stated his legs were black and purple, that jail staff mocked him, and that Horn threatened him. [Aplt. Appx. Vol. XIV, 3116-3118]. But again, the District Court did not consider that an ambulance was called for Ellis on October 21, that EMS found no acute medical problem, and that although EMS was prepared to transport him to the hospital, Ellis refused to go. [Aplt. App. Vol. IV, 884:18-885:9; Vol. V, 1143:22-1144:15; 1168:24-1169:24; 1206:16-1207:3].

The Sheriff does not deny that Ellis likely experienced suffering during his final hours of life. Plaintiff's own expert testified that it was reasonable for jail staff not to realize Ellis's condition was serious until the morning of his death based on having observed Ellis walking around on the evening of October 21. [App. Vol. VII, 1596:5-1597:12]. Assuming that Horn should have realized the seriousness of his condition when she saw him after 10:00 a.m. on the morning of October 22, the jury

award represents approximately $8 million *per hour* for pain suffering due to the delay in medical care from Horn's interaction with him until his death. Even viewing this in the light most favorable to Bond and assuming care was delayed for approximately twenty hours after jail staff should have realized the seriousness of his condition, the award was still almost $2 million *per hour* for pain and suffering. Two to eight million dollars per hour is excessive and shocking for all of the reasons identified in the Sheriff's Opening Brief and Supplemental Brief. (Opening Brief, p. 40-62; Supplemental Brief, pp. 3-9, 11-12).

Bond appears to criticize the Sheriff for not performing an analysis of whether the verdict was shocking to the conscience. The Sheriff maintains that he absolutely did demonstrate the shocking size of the verdict through comparisons to verdicts in other cases and explanation of mitigating evidence. (Opening Brief, pp. 40-62; Supplemental Brief, pp. 3-9, 11-12). To the extent Bond expected the Sheriff to lay out a defined test for whether a verdict is shocking or not, the Sheriff is not aware of the Tenth Circuit having identified any such test and Bond has not cited to one himself. Nor is the Sheriff aware of any other federal circuit identifying such a test. The First Circuit has held that a compensatory damages verdict shocks the conscience when it is "exaggeratedly high" and when it "is shown to exceed any rational appraisal or estimate of the damages that could be based upon the evidence before the jury." *Monteagudo v. Asociacion de Empleados del Estado Libre*

18

*Asociado de Puerto Rico*, 554 F.3d 164, 174-175 (1st Cir. 2009). The Eighth Circuit has described a conscience-shocking award as one that is "monstrous." *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 931-932 (8th Cir. 2010). Here, the verdict was exaggeratedly high and exceeds any rational estimate of damages based upon the evidence presented to the jury (even when viewed in the light most favorable to Bond).

The District Court had discretion in whether to order a new trial or remittitur based on the excessiveness of the verdict. Abuse of discretion occurs when a district court renders a judgment which is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Burke v. Regalado*, 935 F.3d 960, 1011 (10th Cir. 2019). Here, the denial of the Motion for New Trial and Motion for Remittitur was manifestly unreasonable given the comparison to verdicts in other cases, which the District Court *did* consider when denying those Motions. Because the District Court abused its discretion in holding that the $33 million compensatory damages verdict was not excessive or shocking to the conscience, the denial of the Motion for New Trial and Motion for Remittitur should be reversed.

## V.    THE JURY INSTRUCTIONS WERE NOT ADEQUATE

In his Response, Bond appears to suggest that *Crowson* permits holding a municipality liable under § 1983 pursuant to a "systemic failure" theory of liability which is premised on a failure to train. (Response, p. 63). *Crowson* clearly does not

permit that, as the decision plainly states that there no doubt "that a failure-to-train claim may not be maintained without a showing of a constitutional violation by the allegedly un-,-under-, or improperly-trained officer." *Crowson*, 983 F.3d at 1187. Bond incorrectly asserts that the Sheriff argued that Bond could not advance alternative theories of liability. (Response, p. 63). The Sheriff made no such argument. Rather, the Sheriff argued that the instruction given to the jury did not explain that those were *alternative* theories of liability or explain that a "systemic failure" cannot be based on a "failure to train" even though the jury was later instructed that deliberate indifference can be established by a failure to train.

Thus it is possible the jury found the Sheriff liable for a systemic failure due to a failure to train staff. "Failure to properly instruct the jury requires a new trial if the jury might have based its verdict on the erroneously given instruction." *Henning v. Union Pacific Railroad,* 530 F.3d 1206, 1221 (10th Cir. 2008). Because Instruction 17 was erroneous and the jury might have based its verdict on the inadequate instruction, a new trial is warranted.

Bond then argues that "[a]t no time did the jury hear a single suggestion that words alone are sufficient to establish a constitutional violation" and that there is "nothing in the record that would have left the jury with that impression." (Response, p. 64). He did not address that his own counsel repeatedly suggested to the jury that the abusive language was the last thing Ellis heard before his death, inferring the use

of such language was a constitutional violation. [Aplt. App. Vol. IV, 0934-0942]. Nor did he address the judge's statement on the record that that language "**has been emphasized again and again and again, and we've heard it a lot and that it's taken a certain prominence here**." [App. Vol. VII, 1476:11- 22]. Instead, he argues that no instruction regarding abusive language was needed because words cannot be separated from actions in this case, though he pointed to no authority in support of that claim. Bond's counsel told the judge he objected to including the instruction because it "would be confusing." [App. Vol. VII, 1476:11- 22]. Potential confusion regarding words and actions, and which can be constitutional violations and which cannot be, makes the instruction all the more necessary. The jury was permitted to find that Horn violated Ellis's constitutional rights if it believed she denied him access to medical care, but it was not permitted to find that a constitutional violation occurred because she used vulgar language and threatened to chain him to the D-ring. Yet the jury was never instructed as to that distinction even though her choice of words was a central theme of Bond's case. Because the jury was not adequately instructed on this issue either, a new trial is warranted.

## VI.    THE ATTORNEY FEE AWARD WAS ABUSE OF DISCRETION

Bond's only response to the Sheriff's arguments regarding the attorney fee award in this matter was that the District Court did not abuse its discretion in making the award because litigation lasted for eight years. (Response, p. 75). Although Bond

has the burden of establishing the reasonableness of the fees claimed, he did not address the Sheriff's arguments that the District Court awarded fees spent on unnecessary and duplicative tasks, including reviewing 343 hours of video footage when Ellis was incarcerated for approximately 288 hours. *See Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995); (Opening Brief, p. 64). Nor did he address the Sheriff's arguments that the District Court awarded fees for work performed on dismissed claims and claims against other parties to the litigation. (Opening Brief, p. 64). Because the award included such time, it should have been further reduced. *See Ramos*, v. *Lamm*, 713 F.2d 546, 553 (10th Cir. 1983); *Praseuth v. Rubbermaid*, 406 F.3d 1245, 1258 (10th Cir. 2005).

## VII.   THE DISTRICT COURT HAD JURISDICTION TO CONSIDER THE MOTION TO RECONSIDER

Bond argues that the District Court lacked jurisdiction to hear the Sheriff's Motion to Reconsider. In general, a notice of appeal divests the district court of jurisdiction over a matter. *Warren v. American Bankers Ins. Of Florida*, 507 F.3d 1239, 1242 (10th Cir. 2007). However, even when a Rule 60 motion to reconsider is filed after a notice of appeal and a district court lacks jurisdiction to grant the motion, the district court is still "free to consider the motion, and the court could then either deny it on the merits" or it could notify the appellate court "of its intention to grant the motion upon proper remand." *Aldrich Enterprises, Inc. v. U.S.*, 938 F.2d 1134, 1143 (10th Cir. 1991) (citing *Garcia v. Regents of Univ. of California*, 737 F.2d 889,

22

890 (10th Cir. 1984); *Summers v. State of Utah*, 927 F.2d 1165, 1168-69 (10th Cir. 1991); *Bowder v. Director, III, Dept. of Corrections*, 434 U.S. 257, 263, n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978)). Here, Bond admits that the District Court ruled on the Motion to Reconsider as a Rule 60 motion. (Response, p. 75). The District Court was therefore free to consider the Motion.

Bond admits that the purpose of the Sheriff's Motion to Reconsider was to call the court's attention to the *Young* decision which had been issued the same day. (Response, p. 76). However, Bond did not address *any* of the Sheriff's arguments regarding *Young* and its persuasive authority anywhere in his Response. He implies that the *Young* decision cannot be considered by this Court to have any impact on this matter, but does not cite to any authority to support that position. A district court's ruling in another matter is binding only on the parties to that case, but can, of course, be persuasive authority in other subsequent cases. *Favela v. City of Las Cruces ex rel. Las Cruces Police Dept.*, 431 F.Supp.3d 1255, 1276 (D.N.M. 2020).

Bond also did not address any of the arguments the Sheriff raised in his Supplemental Brief regarding the District Court's abuse of discretion in analyzing Defendant's Motion to Reconsider under the Rule 60(b)(2) standard and conducting an abbreviated, incomplete, and insufficient analysis under the Rule 60(b)(6) standard. He has therefore not set forth any argument that the Motion was properly denied.

## <u>CONCLUSION</u>

The District Court erred or abused its discretion, as appropriate, regarding each of the issues raised by the Sheriff in his Opening Brief. The Sheriff has provided this Court with ample grounds on which to overturn the District Court's rulings on the Sheriff's Motion for Judgment as a Matter of Law, Motion for New Trial, Motion for Remittitur, and Motion to Reconsider, and on Plaintiff's Motion for Attorney Fees.

Respectfully submitted,

<u>s/ Alison B. Levine</u>
Wellon B. Poe, OBA No. 12440
Jamison C. Whitson, OBA No. 18490
Alison B. Levine, OBA No. 33021
COLLINS ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK 73105
Telephone:  (405) 524-2070
Email:      wbp@czwlaw.com
            jcw@czwlaw.com
            abl@czwlaw.com

ATTORNEYS FOR DEFENDANT/
APPELLANT SHERIFF OF
OTTAWA COUNTY

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This Reply Brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because it contains 6,177 words, excluding portions of the Reply that are exempt by Fed. R. App. P. 32(f).

This Reply Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.

s/ Alison B. Levine
Alison B. Levine

## CERTIFICATE OF COMPLIANCE

Pursuant to 10th Cir. R. 32, Appellant certifies that on October 15, 2024, Appellant's Reply Brief is being filed using the Court's CM/ECF system, which will then send notification of such filing to the Parties identified on the Certificate of Service, below. Additionally, Appellant certifies that (a) all required privacy redactions have been made, (b) that the hard copies to be submitted to the Court are exact copies of the version submitted electronically, and (c) that the electronic submission was scanned for viruses with the most recent version of the scanning software program Trend Micro Security Agent and is free of viruses.

s/ Alison B. Levine
Alison B. Levine

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d)(2), I hereby certify that on October 15, 2024, the foregoing Appellant's Reply Brief was filed electronically via the CM/ECF system with the Court and caused the following parties or counsel in this matter to be served by electronic means as more fully reflected on the Notice of Electronic Filing:

Daniel E. Smolen, via danielsmolen@ssrok.com
Robert M. Blakemore, via bobblakemore@ssrok.com
Bryon D. Helm, via bryonhelm@ssrok.com

I further certify that the requisite number of true and correct copies of the foregoing Reply Brief will be forwarded by U.S. First Class Mail to the Court within five business days of the Court issuing notice that the electronic Opening Brief has been accepted:

Clerk of the Court
United States Court of Appeals for the Tenth Circuit
Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257

s/ Alison B. Levine
Alison B. Levine